[No. 66624-0-I. Division One. December 3, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. J.C. JOHNSON, *Appellant*.

114

116

*Casey Grannis* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney,* and *Jeffrey C. Dernbach, Deputy,* for respondent.

¶1 Cox, J. — J.C. Johnson appeals his judgment and sentence of life without the possibility of parole as a persistent offender following his conviction of three counts of second degree assault. He was sentenced to a concurrent 60 month term for his unlawful imprisonment conviction. The court also imposed sentencing enhancements for certain convictions.

¶2 We hold that the trial court properly admitted under ER 404(b) evidence regarding Johnson's acts of domestic violence toward the victim that occurred prior to the charging period. Johnson's challenge to a jury instruction was not preserved for appeal. And he fails to demonstrate that his trial counsel performed deficiently by proposing that instruction at trial. The information charging unlawful imprisonment is deficient, and we dismiss that conviction without prejudice as the proper remedy. The remaining matters raised on appeal do not require relief. We affirm.

¶3 J.C. Johnson and J.J. married in 2007 after what she described as a "whirlwind" romance. J.J. testified at trial that after six months into their relationship, it began to

worsen. She testified that she began to wake up to find Johnson sitting on her chest and choking her in bed. The frequency of the strangulations increased. Johnson also began hitting her, pulling her hair, and hitting her with rocks.

¶4 J.J. testified that during the three-day charging period, May 4 to 6, 2009, Johnson held her in their apartment while he physically abused and threatened her. J.J. further testified that on the last day of the charging period, she was able to escape to a neighbor's house to call the police.

¶5 The State charged Johnson with five criminal acts (in five separate counts): second degree assault by strangulation (count I), second degree assault by intentionally assaulting another and recklessly inflicting substantial bodily harm (count II), second degree assault with a deadly weapon (count III), felony harassment (count IV), and unlawful imprisonment (count V). The State also alleged that Johnson used a deadly weapon for counts III and IV for purposes of deadly weapon enhancements. It also alleged aggravating factors: that the crimes were committed with deliberate cruelty and there was a pattern of domestic abuse.

¶6 A jury convicted Johnson of all charges as well as the deadly weapon allegations. For the deadly weapon allegation for felony harassment, the jury returned a special interrogatory that indicated that the deadly weapon used was a "knife" instead of "duct tape," as charged. The jury found the aggravating factor of a pattern of domestic violence but not deliberate cruelty.

¶7 The court vacated the felony harassment conviction on double jeopardy grounds. The related enhancement was not imposed.

¶8 The court sentenced Johnson to life without the possibility of parole as a persistent offender for the three counts of assault in the second degree, each of which is a most serious offense. The court also imposed a concurrent

sentence of 60 months' confinement for the unlawful imprisonment conviction.

¶9 Johnson appeals.

## ER 404(b) EVIDENCE

¶10 Johnson argues that the trial court abused its discretion in admitting testimony about his prior misconduct. We hold that the trial court properly exercised its discretion by admitting the evidence.

■ ¶11 This court reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion.[1] A trial court abuses its discretion if it acts on untenable grounds or for untenable reasons.[2] "Failure to adhere to the requirements of an evidentiary rule can be considered an abuse of discretion."[3]

¶12 Under ER 404(b), a court is prohibited from admitting "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." But such evidence is admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[4]

■■ ¶13 Prior to admitting ER 404(b) evidence, a trial court must

"(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is

---

[1] *State v. Magers*, 164 Wn.2d 174, 181, 189 P.3d 126 (2008).

[2] *State v. Fualaau*, 155 Wn. App. 347, 356, 228 P.3d 771, *review denied*, 169 Wn.2d 1023 (2010), *cert. denied*, 131 S. Ct. 1786, 179 L. Ed. 2d 657 (2011).

[3] *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007) (citing *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001)).

[4] ER 404(b).

relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."[5]

The trial court must conduct this analysis on the record.[6] If the evidence is admitted, the trial court must give a limiting instruction to the jury.[7]

### State of Mind

¶14 Johnson argues that evidence regarding his prior controlling and domineering behavior was not relevant to prove any element of any charged crime. We disagree.

 ¶15 A person is guilty of felony harassment if he or she knowingly threatens to "cause bodily injury immediately or in the future to the person threatened or to any other person."[8] Additionally, felony harassment occurs where "[t]he person by words or conduct places *the person threatened in reasonable fear* that the threat will be carried out."[9] Whether the threat created a "reasonable fear" is an essential element of the crime of felony harassment.[10] Washington courts allow evidence of prior misconduct to show that the victim's fear was reasonable.[11] The jury must be able to " 'consider the defendant's conduct in context and . . . sift out idle threats from threats that warrant the mobilization of penal sanctions.' "[12]

¶16 Here, the State charged Johnson with felony harassment for threatening to kill or cause J.J. bodily injury with

[5] *Foxhoven*, 161 Wn.2d at 175 (quoting *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

[6] *Id.*

[7] *Id.*

[8] RCW 9A.46.020(1)(a)(i).

[9] RCW 9A.46.020(1)(b) (emphasis added).

[10] *State v. Ragin*, 94 Wn. App. 407, 411-12, 972 P.2d 519 (1999).

[11] *State v. Binkin*, 79 Wn. App. 284, 292, 902 P.2d 673 (1995), *abrogated by State v. Kilgore*, 147 Wn.2d 288, 53 P.3d 974 (2002).

[12] *Ragin*, 94 Wn. App. at 411 (quoting *State v. Alvarez*, 74 Wn. App. 250, 261, 872 P.2d 1123 (1994), *aff'd*, 128 Wn.2d 1, 904 P.2d 754 (1995)).

duct tape. The trial court admitted testimony of the defendant's prior controlling and domineering behavior, including testimony that Johnson isolated J.J. from others, monitored her conversations, and accused her of infidelity. J.J. testified that Johnson threatened to put duct tape on her hands, feet, mouth, and nose if she did not tell him "who [she] was sleeping with." This evidence shows that J.J.'s fear regarding Johnson's threats was reasonable, and thus established an element of felony harassment.

¶17 The State also charged Johnson with three counts of second degree assault. A person is guilty of second degree assault if he or she "[a]ssaults another with a deadly weapon."[13] In *State v. Magers*, the supreme court, in a plurality decision, affirmed the trial court's admission of the defendant's prior misconduct.[14] The trial court admitted the evidence for an assault charge because " 'reasonable fear of bodily injury' " was at issue.[15] The court pointed to the jury instructions to conclude that the defendant's prior misconduct was " 'necessary to prove a material issue.' "[16] Thus, the victim's state of mind was a necessary element that the State was required to prove in that case.

¶18 Here, as in *Magers*, J.J.'s "fear of bodily injury"—her state of mind—was also at issue. Thus, evidence of Johnson's prior bad acts was admissible to prove J.J.'s state of mind, a necessary element for the assault charge (count III).

¶19 It is noteworthy that jury instruction 7 was the limiting instruction that the court gave to the jury that memorialized both the basis for admission of the evidence of prior misconduct and how the jury should use the evidence:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of testimony regarding

---

[13] RCW 9A.36.021(1)(c).

[14] 164 Wn.2d 174, 183, 189 P.3d 126 (2008).

[15] *Id.*

[16] *Id.* (quoting *State v. Powell*, 126 Wn.2d 244, 262, 893 P.2d 615 (1995)).

122

alleged acts of domestic violence committed by the defendant against [J.J.] prior to May 4, 2009. This evidence may be considered by you only for the purposes of assessing [J.J.'s] *state of mind with respect to counts III, IV and V, and if you find the defendant guilty of any of the charged offenses or the lesser included offense of Assault in the Third Degree on count II. You may not consider it for any other purpose.* Any discussion of the evidence during your deliberations must be consistent with this limitation.[17]

Moreover, jury instruction 8 provided:

An assault is also an act, with unlawful force, done with the intent to create in another *apprehension and fear of bodily injury*, and which in fact creates in another a *reasonable apprehension and imminent fear of bodily injury* even though the actor did not actually intend to inflict bodily injury.[18]

Likewise, jury instruction 28 provided:

To convict the defendant of the crime of felony harassment as charged in Count IV, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That during the time intervening between May 4, 2009 and May 6, 2009, the defendant knowingly threatened to kill [J.J.] immediately or in the future;

(2) *That the words or conduct of the defendant placed [J.J.] in reasonable fear that the threat to kill would be carried out*;

(3) That the defendant acted without lawful authority; and

(4) That the threat was made or received in the State of Washington.[19]

¶20 These instructions show that the purpose of the admission of the prior misconduct evidence was for the state of mind of the victim. And we presume the jury follows

---

[17] Clerk's Papers at 38 (emphasis added).

[18] *Id.* at 39 (emphasis added).

[19] *Id.* at 60 (emphasis added).

the court's instructions.[20] Thus, this evidence was necessary for the State to prove elements for both the assault charge and the felony harassment charge. The trial court properly exercised its discretion under controlling case law.

¶21 The State also argues that intimidation, as an element of unlawful imprisonment, required the State to prove J.J.'s state of mind. Johnson does not challenge the admission of the evidence on that basis.

¶22 Johnson points to the concurrence of two justices to the lead opinion in *Magers* to challenge the admissibility of the evidence here. His reliance is misplaced.

¶23 There, the two justices explained that the State was not required to prove the victim's state of mind under the theory of second degree assault advanced in that case.[21] According to these justices, the prior misconduct was not actually offered to demonstrate the reasonableness of the victim's fear.[22] Rather, it was offered to explain why the victim had changed her testimony—impeachment.[23]

¶24 Notably, they did not disagree with the proposition in the lead opinion that admission of evidence of the victim's state of mind would be proper under the right circumstances. Rather, they disagreed with that opinion's application of that proposition to the facts of that case.[24]

¶25 Here, the facts show admission of the evidence on a proper basis: state of mind. The evidence was offered to demonstrate J.J.'s reasonable fear of Johnson. It was not offered to impeach her testimony. Thus, the point raised by the two justices' concurrence in *Magers* has no bearing on this case.

---

[20] *State v. Montgomery*, 163 Wn.2d 577, 596, 183 P.3d 267 (2008).

[21] *Magers*, 164 Wn.2d at 194.

[22] *Id.*

[23] *Id.*

[24] *Id.*

¶26 Johnson also argues that the cases cited to support the State's argument are distinguishable because they involved acts of physical violence, not controlling or domineering behavior. This argument is not persuasive.

¶27 Controlling or domineering behavior, whether considered alone or in the context of a history of physical abuse, may also tend to prove the victim's reasonable fear of an abuser. This is particularly true in the context of domestic violence.[25] We reject Johnson's argument that seeks to establish a material distinction between physical violence and controlling or domineering behavior in this domestic violence situation.

¶28 Johnson also argues that J.J. did not expressly testify that Johnson's controlling and domineering behavior contributed to her fear. But, her testimony, taken as a whole, implicitly shows that it did. For example, J.J. gave the following testimony: "I'd wake up and he would have the ice pick here like to scare me, threaten me. I didn't know what he was going to do."[26] Thus, this argument is not persuasive.

*Aggravating Factors*

¶29 The State also argues that Johnson's prior misconduct was relevant to prove the domestic violence aggravators. We agree.

¶30 The State alleged that all of the offenses were "part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time."[27] As we previously discussed, jury instruction 7 states:

---

[25] *See State v. Grant*, 83 Wn. App. 98, 107 n.5, 920 P.2d 609 (1996) (discussing how domestic violence victims often minimize the degree of violence when discussing it with others).

[26] Report of Proceedings (Dec. 6, 2010) at 78.

[27] RCW 9.94A.535(3)(h)(i).

Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of testimony regarding alleged acts of domestic violence committed by the defendant against [J.J.] prior to May 4, 2009. *This evidence may be considered by you only* for the purposes of assessing [J.J.'s] state of mind with respect to counts III, IV and V, and *if you find the defendant guilty of any of the charged offenses* or the lesser included offense of Assault in the Third Degree on count II. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.[28]

¶31 In addition to admitting the prior misconduct evidence for counts III, IV, and V, the court also admitted the evidence to prove the domestic violence aggravators. This was a proper exercise of discretion by the trial court. There was no error.

## Credibility

¶32 The State argues, in the alternative, that Johnson's prior misconduct was admissible, so the jury could assess J.J.'s credibility. It relies, in part, on this court's decision in *State v. Baker*.[29] There, this court expressly rejected Johnson's argument here that admission of evidence of prior misconduct to help the jury assess the credibility of a victim at trial and to permit the jury to understand why a victim told conflicting stories is limited to victims who recant at trial.[30]

¶33 As we explained earlier in this opinion, the trial court limited the admission of prior misconduct evidence to the issue of the victim's state of mind for three of the charged counts and the domestic violence aggravators. Because the trial court correctly admitted the prior misconduct evidence on these bases, we need not address further

---

[28] Clerk's Papers at 38 (emphasis added).

[29] 162 Wn. App. 468, 259 P.3d 270, *review denied*, 173 Wn.2d 1004 (2011).

[30] *Id.* at 475.

whether it would also have been proper to admit the evidence to allow the jury to assess J.J.'s credibility.

## ER 404(b) Balancing Test

¶34 Johnson argues that the trial court failed to properly balance the admission of his prior misconduct as required under ER 404(b). We disagree.

¶35 Under ER 404(b), the trial court must balance the probative value of the evidence against its potential prejudicial effect.[31] The trial court must conduct this analysis on the record.[32] Thus, the record must demonstrate that the trial court made a "conscious determination" that the evidence's probative value outweighed its prejudicial impact.[33]

¶36 After hearing the parties' arguments and the specific acts of misconduct that the State sought to admit, the trial court engaged in the following analysis:

> The fourth thing the Court looks at is does the—*403 says evidence may be excluded that's probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, et cetera.* So what I look at is, is there a danger of unfair prejudice.
>
> And that gets into why do we have 404(b) anyway, because if a person did something in the past, they are more likely to do it again, it's very relevant. But because it's—but because it's so powerfully relevant, for some reason we exclude it.
>
> If somebody had stole something five times before and this is a crime for theft, we wouldn't allow those in unless it was impeachment, even though it's very probative. So all evidence is prejudicial.

---

[31] *See Foxhoven*, 161 Wn.2d at 175.

[32] *Id.* at 175.

[33] *State v. Tharp*, 96 Wn.2d 591, 597, 637 P.2d 961 (1981).

Relevant means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable.[34]

This analysis is sufficient to demonstrate that the trial court engaged in the balancing test required under ER 404(b). This statement, read in context, shows that the court was aware of the proper standard and applied it. There was no error.

¶37 Johnson argues that his prior misconduct was unfairly prejudicial because it was likely to elicit a strong emotional response from the jury, the jury had plenty of evidence during the three-day charging period with which it could assess J.J.'s state of mind, and the trial became a "trial on the relationship."

¶38 Obviously, the evidence was prejudicial, but that is not the test. Rather, the evidence must be *unfairly prejudicial*. We conclude from our review of this record that the court did not abuse its discretion in determining that there was no unfair prejudice here.

## JURY INSTRUCTION

¶39 Johnson next argues that the trial court's definitional instruction misstated the law and relieved the State of its burden of proof for the charge of second degree assault by recklessly inflicting substantial bodily harm. Because the "invited error doctrine" precludes us from reaching this issue and there is no demonstration that this issue falls within any RAP 2.5(a) exception, we do not consider his claim on this basis.

¶40 The "invited error doctrine" states that a " 'party may not request an instruction and later complain

---

[34] Report of Proceedings (Nov. 30, 2010) at 18 (emphasis added).

on appeal that the requested instruction was given.' "[35] This doctrine prevents review of instructional errors even if they are of "constitutional magnitude."[36] It applies when the trial court's instruction contains the same error as the defendant's proposed instruction.[37]

¶41 Here, Johnson argues that there was an error in the definition of the term "reckless" in jury instruction 11. But the section of the first paragraph of instruction 11 that defines "reckless" is the same as Johnson's proposed instruction. Accordingly, the invited error doctrine prevents review of this instructional error.[38]

¶42 We note that Johnson does not make a showing that this challenge falls within the narrow exceptions stated in RAP 2.5(a). Accordingly, we need not address this argument any further.

## INEFFECTIVE ASSISTANCE OF COUNSEL

¶43 Johnson argues, in the alternative, that his counsel was ineffective because he proposed a flawed jury instruction regarding recklessness. Specifically, he claims that the definition in jury instruction 11 misstates the law that is properly reflected in jury instruction 18, the "to convict" instruction. While the trial court erred in giving jury instruction 11, trial counsel's performance was not deficient.

### Standard of Review

¶44 An appellant may challenge a jury instruction that he proposed if it is in the context of an ineffective

---

[35] *City of Seattle v. Patu*, 147 Wn.2d 717, 721, 58 P.3d 273 (2002) (internal quotation marks omitted) (quoting *State v. Studd*, 137 Wn.2d 533, 546, 973 P.2d 1049 (1999)).

[36] *Id.* at 720.

[37] *State v. Bradley*, 96 Wn. App. 678, 681-82, 980 P.2d 235 (1999).

[38] *See Patu*, 147 Wn.2d at 721.

assistance claim.[39] The invited error doctrine does not preclude review.[40]

■ ¶45 To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his trial.[41] The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct.[42] Failure on either prong defeats a claim of ineffective assistance of counsel.[43]

*Jury Instruction 11*

■ ¶46 "Jury instructions must inform the jury that the State bears the burden of proving each essential element of a criminal offense beyond a reasonable doubt."[44] "It is reversible error to 'instruct the jury in a manner' that would relieve the State of the burden of proof."[45]

¶47 Here, there are two related instructions. Instruction 18, the "to convict" instruction, states:

> To convict the defendant of the crime of assault in the second degree, as charged in count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

---

[39] *Bradley*, 96 Wn. App. at 682; *see also State v. Kyllo*, 166 Wn.2d 856, 861, 215 P.3d 177 (2009).

[40] *Kyllo*, 166 Wn.2d at 861.

[41] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[42] *McFarland*, 127 Wn.2d at 336.

[43] *Strickland*, 466 U.S. at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

[44] *State v. Peters*, 163 Wn. App. 836, 847, 261 P.3d 199 (2011) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Schulze*, 116 Wn.2d 154, 167-68, 804 P.2d 566 (1991)).

[45] *Id.* (quoting *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995)).

(1) That during the time intervening between May 4, 2009 and May 6, 2009, the defendant intentionally assaulted [J.J.];

(2) That the defendant thereby recklessly inflicted *substantial bodily harm* on [J.J.]; and

(3) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to count II.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to count II.[46]

Jury instruction 11 is a definitional instruction that states:

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that *a wrongful act* may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.

When recklessness as to a particular fact or result is required to establish an element of a crime, the element is also established if a person acts intentionally or knowingly as to that fact or result.[47]

¶48 Johnson argues that trial counsel's proposal of an allegedly incorrect definition of "recklessness" in jury instruction 11 was deficient performance. He supports this argument by pointing to cases decided since his trial that have concluded that a definitional instruction should have been consistent with the correct "to convict" instruction.

¶49 In *State v. Peters*, decided in September of 2011, Peters was convicted of first degree manslaughter, which requires the State to prove that the defendant " '*recklessly causes the death* of another person.' "[48] This court concluded that the jury instructions provided an improper

---

[46] Clerk's Papers at 49 (emphasis added).

[47] *Id.* at 42 (emphasis added).

[48] 163 Wn. App. 836, 847, 261 P.3d 199 (2011) (quoting RCW 9A.32.060(1)(a)).

definition of the word "reckless."[49] The definitional instruction provided that the State only had to prove that Peters "knew of and disregarded 'a substantial risk that a *wrongful act* may occur,' rather than that 'a substantial risk that *death* may occur.' "[50] This court then held that "[t]he instruction impermissibly relieved the State of the burden of proving beyond a reasonable doubt that Peters knew of and disregarded a substantial risk that death may occur, and allowed the jury to convict Peters of only a wrongful act."[51] This court's decision was based on the supreme court's holding in *State v. Gamble,* which also involved manslaughter.[52] Thus, at the times those cases were decided, it was not clear whether a more specific definitional instruction was necessary for offenses other than manslaughter.

¶50 In *State v. Harris,* decided in October 2011, Division Two of this court agreed with this court's analysis in *Peters* and extended it to an assault charge.[53] In *Harris,* the defendant was convicted of first degree assault of a child, which required that the State prove that the defendant " '[r]ecklessly inflict[ed] great bodily harm.' "[54] The definition for "reckless" in the jury instruction was the same as the instruction in *Peters.*[55] The court concluded that the definition for "reckless" misstated the law because it stated "wrongful act" instead of "great bodily harm."[56]

¶51 In *Peters* and *Harris,* both courts pointed out that the *Washington Pattern Jury Instructions'* (WPIC) defini-

---

[49] *Id.* at 849-50.

[50] *Id.* (emphasis added).

[51] *Id.* at 850.

[52] 154 Wn.2d 457, 114 P.3d 646 (2005).

[53] 164 Wn. App. 377, 387, 263 P.3d 1276 (2011).

[54] *Id.* at 383 (first alteration in original) (quoting RCW 9A.36.120(1)(b)(i)).

[55] *Compare Harris,* 164 Wn. App. at 384, *with Peters,* 163 Wn. App. at 845.

[56] *Harris,* 164 Wn. App. at 387-88.

tion for "recklessness" includes brackets around the term "wrongful act" with the direction to "[u]se bracketed material as applicable."[57] Currently, the comment to the WPIC definition for "recklessness" explains the uncertainty of the law:

> The [Gamble] court gave no indication as to whether more particularized standards would also apply to offenses other than manslaughter. The first paragraph of the instruction above is drafted in a manner that allows practitioners to more fully consider how Gamble applies to other offenses. If the instruction's blank line is used, care must be taken to avoid commenting on the evidence.[58]

¶52 At the time of Johnson's trial in 2010, there was uncertainty whether the Gamble rationale would be extended beyond the crime of manslaughter. The comments to the WPIC reflect this uncertainty.

 ¶53 Harris appears to be the first case to extend a "particularized standard" to an assault offense. In Harris, Division Two explained that when a court is instructing a jury, "a trial court should use the statute's language 'where the law governing the case is expressed in the statute.' "[59] We agree with that principle. And we agree that the principle stated in Gamble should be extended and applied to the crime of second degree assault.

¶54 Here, Johnson was convicted of three second degree assaults. For one of the assault charges, RCW 9A.36-.021(1)(a) required the State to prove that Johnson "[i]ntentionally assault[ed] another and thereby recklessly inflict[ed] substantial bodily harm." This language was reflected in the "to convict" jury instruction for this charge. There was no error and none claimed for this instruction.

---

[57] Peters, 163 Wn. App. at 849 (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.03 note on use (3d ed. 2008) (WPIC)); see also Harris, 164 Wn. App. at 385.

[58] WPIC 10.03 cmt. at 210.

[59] Harris, 164 Wn. App. at 387 (quoting State v. Hardwick, 74 Wn.2d 828, 830, 447 P.2d 80 (1968)).

¶55 However, the jury instruction that stated the definition of "reckless" included the same general "wrongful act" language as in *Peters* and *Harris*. The definition should have used the more specific statutory language of "substantial bodily harm," not "wrongful act." The trial court erred in giving this instruction.

¶56 The State argues that this court should reject Division Two's analysis and use this court's approach in *State v. Holzknecht*.[60] We decline this invitation.

¶57 As the State notes, the defendant in *Holzknecht* did not challenge the use of the term "wrongful act" in the definition of "reckless." Instead, the issue was whether "[t]he instructions made clear that a different mental state must be determined for each element: intent as to assault, and recklessness as to infliction of substantial bodily harm."[61] Since the issue was different in this case, the conclusion that the instructions were "clear" cannot be extended here.

¶58 The State also argues that *Peters* is distinguishable from this case because the "to convict" instructions were much different there. But, as Johnson points out, this court's holding in *Peters* was focused on the definition of recklessness, not the "to convict" instruction itself.[62]

## Deficient Performance

¶59 Though we hold that the instruction defining recklessness here was error, for Johnson's ineffective assistance of counsel claim, the question is whether trial counsel's performance was defective for failing to predict the outcome in *Peters* and *Harris*. Given the strong presumption of effective representation, we cannot say that the performance in this case was deficient.

---

[60] 157 Wn. App. 754, 238 P.3d 1233 (2010), *review denied*, 170 Wn.2d 1029 (2011).

[61] *Holzknecht*, 157 Wn. App. at 766.

[62] *Peters*, 163 Wn. App. at 849-50.

¶60 In *State v. Studd*, the supreme court held that there was an instructional error regarding self-defense.[63] There, one of the defendants framed his argument on appeal in the context of an ineffective assistance of counsel claim to avoid the invited error doctrine.[64] The supreme court concluded that the defendant's counsel was not deficient because a key case, clarifying the counsel's error, was not decided at the time of trial.[65] The court explained that "counsel can hardly be faulted for requesting a jury instruction based upon a then-unquestioned WPIC . . . ."[66]

¶61 Here, *Peters* and *Harris* had not been decided at the time of trial. Thus, *Harris* had not yet clarified that the principle first stated in *Gamble* should be extended to cases other than manslaughter. The uncertainty of whether the principle of *Gamble* would be extended to other cases is reflected in the comments to WPIC 10.03, which we previously discussed in this opinion. Given the strong presumption of effective representation, as in *Studd*, we cannot say that Johnson's trial counsel's performance was deficient in this case.

¶62 Johnson points to *State v. Kyllo* to support his argument that there were "several cases that should have indicated to counsel that the pattern instruction was flawed."[67] We disagree.

---

[63] 137 Wn.2d 533, 538, 973 P.2d 1049 (1999).

[64] *Id.* at 550-51.

[65] *Id.* at 551.

[66] *Id.*; *see also State v. Summers*, 107 Wn. App. 373, 383, 28 P.3d 780 (2001) (explaining that counsel's performance was not deficient because "counsel can hardly be found to fall below acceptable standards by requesting an instruction based upon a WPIC instruction appellate courts had repeatedly and unanimously approved").

[67] 166 Wn.2d 856, 866, 215 P.3d 177 (2009).

¶63 Johnson cites *Gamble*,[68] *State v. R.H.S.*,[69] and *State v. Keend*[70] to prove that Johnson's counsel should have known that specific statutory language should have been used for the definition of "recklessness" instead of the generic "wrongful act" language. Johnson also argues that pattern instructions must be "individually tailored for a particular case."[71] While this latter statement is true, we are not persuaded that this means trial counsel's performance here was deficient. At most, at the time of trial in this case, there was uncertainty about the issue now before us. Trial counsel's choice to use the bracketed language of the WPIC, though incorrect, was not objectively unreasonable.

¶64 We need not address the prejudice prong, given the lack of deficient performance of counsel. In sum, Johnson's ineffective assistance of counsel claim fails.

## SUFFICIENCY OF INFORMATION

¶65 Johnson argues that the information for the unlawful imprisonment and felony harassment charges were insufficient because they were missing elements of the crime. Because the trial court vacated the felony harassment conviction and we do not reverse the assault convictions, we need not address his argument regarding felony harassment.[72] Johnson also challenges the deadly weapon enhancement for the felony harassment conviction. But for the reasons stated above, we also need not address this argument.

---

[68] 154 Wn.2d 457.

[69] 94 Wn. App. 844, 974 P.2d 1253 (1999).

[70] 140 Wn. App. 858, 166 P.3d 1268 (2007).

[71] WPIC 10.03.

[72] Johnson acknowledges that his felony harassment conviction was vacated on double jeopardy grounds. Johnson explains that he is challenging this conviction because the State could attempt to reinstate it in the event that the greater conviction of second degree assault with a deadly weapon was reversed on appeal.

## Unlawful Imprisonment

¶66 Johnson challenges the sufficiency of the second amended information charging him with the crime of unlawful imprisonment. We hold that the information is deficient and dismiss this conviction without prejudice.

¶67 The adequacy of a charging document is reviewed de novo.[73] A charging document is constitutionally defective under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution if it fails to include "all essential elements of the crime."[74] The rationale underlying this rule is that a defendant must be apprised of the charges against him or her and allowed to prepare a defense.[75] "An 'essential element is one whose specification is necessary to establish the very illegality of the behavior' charged."[76]

¶68 Where, as here, the adequacy of a charging document is challenged for the first time on review, "it will be construed liberally and will be found sufficient if the necessary elements appear in any form, or by fair construction may be found, on the face of the document."[77] But " '[i]f the document cannot be construed to give notice of or to contain in some manner the essential elements of a crime, the most liberal reading cannot cure it.' "[78] The court employs a two-part test:

(1) do the necessary elements appear in any form, or by fair construction can they be found, in the information, and if so, (2)

[73] State v. Allen, 161 Wn. App. 727, 751, 255 P.3d 784, review granted, 172 Wn.2d 1014 (2011).

[74] State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995).

[75] Id.

[76] State v. Feeser, 138 Wn. App. 737, 743, 158 P.3d 616 (2007) (quoting State v. Johnson, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992)).

[77] State v. McCarty, 140 Wn.2d 420, 425, 998 P.2d 296 (2000).

[78] State v. Moavenzadeh, 135 Wn.2d 359, 363, 956 P.2d 1097 (1998) (quoting State v. Campbell, 125 Wn.2d 797, 802, 888 P.2d 1185 (1995)).

can the defendant show he or she was actually prejudiced by the inartful language.[79]

"If the necessary elements are not found or fairly implied, however, we presume prejudice and reverse without reaching the question of prejudice."[80]

¶69 Here, the information for unlawful imprisonment provided:

> And I, Daniel T. Satterberg, Prosecuting Attorney aforesaid further do accuse J.C. JOHNSON of the crime of **Unlawful Imprisonment – Domestic Violence**, based on a series of acts connected together with another crime charged herein, committed as follows:
>
> That the defendant J.C. JOHNSON in King County, Washington, during a period of time intervening between May 4, 2009 through May 6, 2009, did *knowingly restrain* [J.J.], a human being;
>
> Contrary to RCW 9A.40.040, and against the peace and dignity of the State of Washington.[81]

¶70 Johnson argues that this information failed to include all of the "essential elements" of the crime because they are neither expressly stated nor fairly implied. We agree.

¶71 Since Johnson challenges the information for the first time on appeal, it must be liberally construed.[82] Even with a liberal reading, however, all of the essential elements of unlawful imprisonment do not appear in the document. Since the information fails to set forth all of the essential elements of the crime, prejudice is presumed under the two-part test.[83]

---

[79] *McCarty*, 140 Wn.2d at 425.

[80] *Id.*

[81] Clerk's Papers at 18 (emphasis added).

[82] *See McCarty*, 140 Wn.2d at 425.

[83] *See State v. Kjorsvik*, 117 Wn.2d 93, 105-06, 812 P.2d 86 (1991).

138

¶72 In *State v. Borrero*, the supreme court considered whether an information charging a defendant with attempted first degree murder was sufficient.[84] There, the information failed to include the statutory definition of "attempt," which included the essential element of "substantial step."[85] The court determined the common meaning of "attempt" by looking at a dictionary definition and synonyms.[86] The court concluded that "the element of 'substantial step' is conveyed by the word 'attempt' itself" because the words had the "same meaning and import."[87]

¶73 Here, the statute for unlawful imprisonment provides that "[a] person is guilty of unlawful imprisonment if he or she knowingly *restrains* another person."[88] Under RCW 9A.40.010, to "restrain" means to "restrict a person's movements *without consent and without legal authority in a manner which interferes substantially with his or her liberty*."[89] To restrain a person " 'without consent' " is accomplished by "physical force, intimidation, or deception."[90] The statute does not otherwise define the remainder of the last clause of the definition of "restrain."[91]

¶74 Because the information refers only to "restrain," we look to its plain meaning in a dictionary. The *American Heritage Dictionary* states the following definitions: (1) "[t]o hold back or keep in check; control"; (2) "[t]o prevent (a person or group) from doing something or acting in a certain way"; and (3) "[t]o hold, fasten, or secure so as to

---

[84] 147 Wn.2d 353, 359, 58 P.3d 245 (2002).

[85] *Id.*

[86] *Id.* at 363; *see also State v. Morgan*, 163 Wn. App. 341, 346-47, 261 P.3d 167 (2011) (taking the same "common meaning" approach to the word "attempt"), *review denied*, 175 Wn.2d 1013, 287 P.3d 11 (2012).

[87] *Borrero*, 147 Wn.2d at 363.

[88] RCW 9A.40.040 (emphasis added).

[89] (Emphasis added.)

[90] RCW 9A.40.010(6).

[91] *See id.*

prevent or limit movement."[92] Noticeably absent from these definitions is any mention of restricting "a person's movements without consent," "without legal authority," or by "interfering substantially with his or her liberty." While one could reasonably infer the first and last phrases, there is no way to reasonably conclude that the restraint must be "without legal authority." In short, the information is deficient because this essential element cannot be reasonably inferred from the information.

¶75 In *State v. Warfield*, Division Two of this court held that "the statutory definition of unlawful imprisonment, to 'knowingly restrain,' causes the adverb 'knowingly' to modify all components of the statutory definition of 'restrain,' including the 'without lawful authority' component."[93] There, three bounty hunters knowingly restrained Mark DeBolt for the purpose of arresting him on a 1987 misdemeanor warrant out of Maricopa County, Arizona.[94] The three did not know that the Arizona warrant "had no lawful effect in Washington."[95]

¶76 The court explained that "knowledge of the law is a statutory element of the crime of unlawful imprisonment, without proof of which, defendants' convictions cannot stand."[96] Then, the court reversed the defendants' unlawful imprisonment convictions because "[i]t is uncontroverted that defendants believed they were acting lawfully because they had a warrant for DeBolt's arrest" and a Washington police officer "appeared to ratify the lawfulness of their actions."[97]

---

[92] THE AMERICAN HERITAGE DICTIONARY 1538 (5th ed. 2011), http://www.ahdictionary.com/word/search.html?q=restrain.

[93] 103 Wn. App. 152, 5 P.3d 1280 (2000).

[94] *Id.* at 154.

[95] *Id.* at 155.

[96] *Id.* at 159.

[97] *Id.*

¶77 *Warfield* supports the conclusion that an essential element of unlawful imprisonment is that a person have knowledge that the restraint was "without legal authority."

¶78 The State argues that definitional elements cannot be essential elements of a crime. The State is mistaken.

¶79 The State cites *Rhode* to support this proposition.[98] *Rhode* addressed a similar issue as *Borrero*: whether the substantial step element of attempt could be found in the defendant's information.[99] There, the court explained that the issue was whether the statutory definition was "encompassed" by the term used in the information.[100] As discussed above, "restrain" does not "encompass" the essential element that a person had knowledge that the restraint was "without legal authority." In this case, part of the definition of "restrain" contains an essential element of unlawful imprisonment.

¶80 Johnson's unlawful imprisonment conviction must be vacated without prejudice.[101]

## OFFENDER SCORE

¶81 Johnson argues that the judgment and sentence contain incorrect offender scores. We disagree.

¶82 Offender scores are reviewed de novo.[102] Here, there is no error. Johnson states that the offender score for the assault convictions should be "18," not "19," and both parties state the score for the unlawful imprisonment conviction should be "14," not "15." The judgment and sentence reflect these scores.

---

[98] 63 Wn. App. 630, 821 P.2d 492 (1991).

[99] Compare *Rhode*, 63 Wn. App. at 633, *with Borrero*, 147 Wn.2d at 359.

[100] *Rhode*, 63 Wn. App. at 636 (quoting *State v. Smith*, 49 Wn. App. 596, 600, 744 P.2d 1096 (1987)).

[101] See *McCarty*, 140 Wn.2d at 428.

[102] *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003).

¶83 We vacate, without prejudice, the unlawful imprisonment conviction and otherwise affirm the judgment and sentence.

BECKER and LAU, JJ., concur.

After modification, further reconsideration denied February 13, 2013.

Review granted at 178 Wn.2d 1001 (2013).