IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 68574-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KENNETH FRANKLIN MILLER, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 28, 2013 |

SCHINDLER, J. — Kenneth Franklin Miller appeals his conviction of assault in the second degree. Miller asserts the instructions misstate the law and relieve the State of its burden of proof by incorrectly stating the jury need only find that he disregarded a "wrongful act" rather than "substantial bodily harm." We reverse and remand for a new trial.

## FACTS

United Parcel Service (UPS) driver Randall Rasar delivered packages to Kenneth Franklin Miller's house in Bellevue approximately once every other month for 10 to 15 years.

On November 6, 2009, UPS notified Miller that he needed to sign for the delivery scheduled for that evening. Rasar parked the UPS truck at the end of the sloping driveway leading to Miller's house at approximately 6:00 p.m. and walked up the

driveway to the front porch. Rasar rang the doorbell "several times" and then "pound[ed]" on the door with his flashlight.

Miller opened the door and asked Rasar why he was "pounding" on the door. Rasar told Miller he was wearing earplugs and he thought the doorbell was disconnected. Miller signed for the package. After Rasar walked down the stairs of the front porch, he turned around and told Miller, "[E]njoy your package jerk."

Miller walked down the steps after Rasar calling, "[H]ey," and caught up with Rasar "in the middle of the driveway." Miller said that Rasar "shouted get away from me. Leave me alone," and then struck Miller in the face with his flashlight. Miller said that after Rasar hit him, he put his hand on Rasar's "shoulder and started pushing [him] forward" toward the UPS truck so Rasar "couldn't turn" and hit him again. While going down the driveway, Miller said that they picked up speed. When they reached the bottom of the driveway, Miller pushed Rasar "off to my side and lifted my arm because I ran into the side of the truck." Miller fell to the ground, got up, and walked back to the house.

According to Rasar, he rang the doorbell only once and "tapped" on Miller's door with his flashlight. Rasar admitted that as he was leaving, he muttered, "What a jerk, under [his] breath." Rasar said that he was only a few feet from the truck when Miller grabbed him from behind, shoved him into the side of the truck, and began punching him in the back of the head and body. Rasar suffered a broken nose and had abrasions on his face, arms, knees, and hip.

The State charged Miller with assault in the second degree of Rasar. The State alleged that Miller intentionally assaulted and recklessly inflicted substantial bodily harm. Miller asserted he used lawful force to defend himself, and the accidental injuries to Rasar were caused when he slammed into the truck.

The State called a number of witnesses, including Rasar, to testify at trial. Miller's spouse Tania Miller testified that while she was in the back bedroom finishing a school project, she heard "a lot of loud knocking and ringing at the door . . . . Probably about 4 or 5 times." Tania said it then "became quiet and I heard voices so I assumed [Miller] had answered the door." Tania saw Miller about 10 minutes later when she took a break. Tania said his face was red and he was sitting on a footstool in the kitchen "looking, just shocked, bewildered, just dazed."

Tania asked Miller what happened "[b]ecause of all the noise." Miller told Tania that

> it was the UPS man which made no sense to me and so I started saying why would the UPS man make all that noise. You know, what's wrong, you know? I could just, I knew something was wrong. He just was being so quiet and just not himself. And so I kept pressing him and finally he told me that the UPS guy had taken a swing at him with a flashlight and not to worry, he was fine. Everything was fine. Of course I was completely worried. I asked if he was okay. He said I'm fine. I managed to get the guy away from me and out in the driveway. Everything's fine. You need to finish your project. We can talk about this later. I said we need to call someone or do we need to do something. He said we will, just please, you must finish. You're almost finished. We can't mess up your graduation. Just finish. It's half an hour I'll be finished. I said I'll be finished in half an hour and he said that's great. And we'll take care of this then.

Miller denied hitting Rasar. Miller testified that he pushed Rasar down the driveway after Rasar hit him to prevent Rasar from hitting him again. Dr. Gary Kato testified that Miller had a number of contusions and bruises on his "right cheek, left forearm, [and] right elbow."

The court instructed the jury on self defense but rejected a number of the other instructions proposed by the defense, including an instruction defining the element of "reckless" to mean acting "with the intent to cause substantial bodily harm."[1]

The jury convicted Miller of assault in the second degree. Miller appeals.

ANALYSIS

Miller asserts the jury instructions misstate the law by incorrectly defining "reckless," relieving the State of its burden of proving an essential element of assault in the second degree and depriving him the opportunity to argue his theory of the case.

We review challenged jury instructions de novo. State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). As a general rule, "jury instructions are sufficient when, read as a whole, they accurately state the law, do not mislead the jury, and permit each party to argue its theory of the case." State v. Teal, 152 Wn.2d 333, 339, 96 P.3d 974 (2004). When a court is instructing a jury, it "should use the statute's language 'where the law governing the case is expressed in the statute.' " State v. Harris, 164 Wn. App. 377, 387, 263 P.3d 1276 (2011) (quoting State v. Hardwick, 74 Wn.2d 828, 830, 447 P.2d 80 (1968)).

---

[1] The defense instruction defining "reckless" states:

A person is reckless or acts recklessly when he knows of and disregards a substantial risk that substantial bodily injury may occur and disregarding this risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

A person also recklessly causes substantial bodily harm if he acted with the intent to cause substantial bodily harm.

4

Jury instructions must inform the jury that the State bears the burden of proving each essential element of a criminal offense beyond a reasonable doubt. State v. Peters, 163 Wn. App. 836, 847, 261 P.3d 199 (2011); In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Schulze, 116 Wn.2d 154, 167-68, 804 P.2d 566 (1991). It is reversible error "to instruct the jury in a manner" that would relieve the State of this burden. State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

RCW 9A.36.021 defines the crime of assault in the second degree, in pertinent part:

> (1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
> (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm.[2]

Here, the to-convict jury instruction correctly states the State must prove beyond a reasonable doubt that Miller recklessly inflicted substantial bodily harm on Rasar. The to-convict jury instruction states:

> To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 6th day of November, 2009, the defendant intentionally assaulted Randall Rasar;
> (2) That the defendant thereby recklessly inflicted substantial bodily harm on Randall Rasar;
> (3) That the defendant was not acting in self-defense; and
> (4) That the acts occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

---

[2] RCW 9A.08.010(1)(c) defines "reckless" as follows:

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

But the jury instruction defining "reckless" states:

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act or result may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.
When recklessness is required to establish an element of a crime, the element is also established if a person acts intentionally or knowingly as to that fact or result.[3]

Miller contends the jury instruction defining "reckless" is misleading and conflicts with the statutory language. The instruction defines "reckless" to mean Miller acted with disregard of a substantial risk that a "wrongful act or result" may occur, rather than the specific statutory language that requires the State to prove he disregarded a substantial risk that "substantial bodily harm" may occur. RCW 9A.36.021(1)(a).

In Gamble, the supreme court addressed whether manslaughter in the first degree is a lesser included offense of felony murder based on assault as the predicate offense. State v. Gamble, 154 Wn.2d 457, 459, 114 P.3d 646 (2005). The court held that while the wrongful act to prove manslaughter required showing that the defendant knew and disregarded a substantial risk of homicide, where the predicate offense was assault, the State need only prove disregard that a substantial risk of substantial bodily harm may occur. Gamble, 154 Wn.2d at 467-68.

[T]o achieve a felony murder conviction here, the State was required to prove only that Gamble acted intentionally and "disregard[ed] a substantial risk that [substantial bodily harm] may occur." Significantly, the risk contemplated per the assault statute is of "substantial bodily harm," not a homicide as required by the manslaughter statute. As such, first degree

---

[3] Miller objected to the court's instructions "to the extent these instructions are not the same as what I offered."

6

manslaughter requires proof of an element that does not exist in the second degree felony murder charge the State brought against Gamble.

Gamble, 154 Wn.2d at 467-68.[4]

After the decision in Gamble, the Washington Supreme Court Committee on Jury Instructions revised the definition of "recklessness." The amended pattern jury instruction includes brackets around the term "wrongful act" and directs the court to state a more particular act, if applicable. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.03, at Supp. 31 (3d ed. Supp. 2011) (WPIC). WPIC 10.03 provides, in pertinent part:

RECKLESSNESS—DEFINITION [Replaced]
A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a [wrongful act] [fill in more particular description of act, if applicable] may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.
[When recklessness [as to a particular [result] [fact]]] is required to establish an element of a crime, the element is also established if a person acts [intentionally] [or] [knowingly] [as to that [result] [fact]].]

The WPIC 10.03 Note on Use states, in pertinent part: "Use bracketed material as applicable. For a discussion of the first paragraph's bracketed alternatives relating to a wrongful act, see the Comment below." The Committee explained, in pertinent part:

The [Gamble] court gave no indication as to whether more particularized standards would also apply to offenses other than manslaughter. The . . . instruction above is drafted in a manner that allows practitioners to more fully consider how Gamble applies to other offenses. If the instruction's blank line is used, care must be taken to avoid commenting on the evidence.

WPIC 10.03 Comment.

---

[4] (Citation omitted) (emphasis in original) (alteration in original).

7

In <u>Harris</u>, Division Two of this court applied the reasoning in <u>Gamble</u> in reversing the conviction in an assault case because the jury instruction defining "reckless" misstated the law. <u>Harris</u>, 164 Wn. App. at 385-88.

The to-convict instruction in <u>Harris</u> correctly stated the jury must find the State proved beyond a reasonable doubt that the defendant "intentionally assaulted [the victim] and recklessly inflicted great bodily harm" to convict him of first degree assault of a child. <u>Harris</u>, 164 Wn. App. at 383-84.[5] But the instruction defining "reckless" referred to "a wrongful act" rather than "great bodily harm." <u>Harris</u>, 164 Wn. App. at 384.[6]

The court held the jury instructions relieved the State of its burden to prove that Harris "knew and recklessly disregarded that great bodily harm could result." <u>Harris</u>, 164 Wn. App. at 388. The court concluded the court erroneously instructed the jury that a person acts recklessly when they know of and disregard a substantial risk that a wrongful act may occur. <u>Harris</u>, 164 Wn. App. at 385.

> In instructing a jury, a trial court should use the statute's language "where the law governing the case is expressed in the statute." . . . <u>Hardwick</u>, 74 Wn.2d [at] 830 . . . . Here, the law governing Harris's child assault charge is expressed in RCW 9A.36.120(1)(b)(i), the statute defining first degree child assault. And a jury instruction defining RCW 9A.36.120(1)(b)(i)'s recklessness requirement must account for the specific risk contemplated under that statute, here great bodily harm, and not some undefined wrongful act. <u>See</u> <u>Gamble</u>, 154 Wn.2d at 468 ("the risk contemplated per the assault statute is of 'substantial bodily harm' ").

<u>Harris</u>, 164 Wn. App. at 387-88.

---

[5] (Internal quotation marks omitted.)

[6] (Internal quotation marks omitted.)

In State v. Johnson, 172 Wn. App. 112, 297 P.3d 710 (2012), we agreed with the decision in Harris and the principle that in defining "reckless," the trial court should have used the specific statutory language for assault in the second degree of "substantial bodily harm" rather than "wrongful act." Johnson, 172 Wn. App. at 131-32.[7]

Here, the State points to the to-convict instruction that correctly states the statutory harm to argue that Harris and Johnson are wrongly decided. We considered and rejected the same argument in Harris.

> [T]he definitional instruction that told the jury it need only find that Harris disregarded the risk of a "wrongful act," even read with the "to convict" instruction, did not properly state the law and these instructions relieved the State of its burden to show that Harris knew and recklessly disregarded that great bodily harm could result from his picking [the victim] up and shaking him.

Harris, 164 Wn. App. at 388; see also Johnson, 172 Wn. App. at 131-32.

We adhere to the decisions in Harris and Johnson, and conclude the jury instructions in this case misstate the law by defining "reckless" to mean Miller knew of and disregarded "a substantial risk that a wrongful act or result may occur," rather than "a substantial risk that substantial bodily harm may occur," lowering the burden of proof and depriving the defense from arguing its theory of the case.

An erroneous jury instruction that misstates the law is subject to a harmless error analysis. State v. Thomas, 150 Wn.2d 821, 844, 83 P.3d 970 (2004). The State bears the burden of showing that the error is harmless beyond a reasonable doubt. Delaware

---

[7] The to-convict instruction and instruction defining "reckless" in Johnson are nearly identical to those here. The only notable difference is that in Johnson, the instruction defining "reckless" (1) referred in the first paragraph only to a "wrongful act" instead of a "wrongful act or result;" and (2) began the second paragraph by stating, "When recklessness as to a particular fact or result is required to establish an element of a crime," instead of, "When recklessness is required to establish an element of a crime." Johnson, 172 Wn. App. at 129-30 (emphasis added) (internal quotation marks omitted).

v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

Inconsistent jury instructions resulting in a misstatement of the law are prejudicial. State v. Wanrow, 88 Wn.2d 221, 239, 559 P.2d 548 (1977). But a misstatement of the law in a jury instruction is harmless if the element is supported by uncontroverted evidence. State v. Brown, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (citing Neder v. United States, 527 U.S. 1, 18, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). "[W]e must 'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.' " Brown, 147 Wn.2d at 341 (quoting Neder, 527 U.S. at 19).

Miller contends the misstatement of law in the jury instructions is not harmless. The State does not address harmless error or engage in a harmless error analysis, relying solely on the argument that Harris and Johnson were wrongly decided. Nonetheless, we conclude the uncontroverted evidence does not establish that Miller knew of and disregarded a substantial risk that substantial bodily harm may occur. Miller testified that after Rasar hit him with the flashlight, Miller put his hand on Rasar's shoulder "so he couldn't turn again and started moving him down the driveway." Further, the State relied on and emphasized the importance of the erroneous jury instruction defining "reckless" during closing argument. The prosecutor argued, in pertinent part:

> A person acts reckless or recklessly when he knows of and disregards a substantial risk that a wrongful act or result may occur and disregards, and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation. And that recklessness, when reckless is required to establish an element of a crime, the element is also established if a person acts intentionally, meaning that they intentionally

pushed this person into the truck to cause his injury. Or knowingly as to that fact or result.

Let's talk about this, because herein is a very important part of this case. [Miller] knew the slope of his driveway. He had been living here— He was asked on his direct, he said he knows every space of his house. His wife said that he's remodeling his house. He knows the slope of his driveway. He walks up it every day. He has to park his cars. He has to, you know, probably set the emergency brake to make sure the cars, you know, probably try to figure out so the cars don't slide out of the driveway so they don't run into the neighbor's house. Right? He knows the slope of his driveway. It is a daily fact in his life.

And he knows at some point that he's quote picking up speed as he's going down his driveway. And he knows that that truck is there. And he should know that running into the truck would cause injury. He actually ran into the truck. He bounced off that truck and fell onto the ground himself. And he's actually behind the person that struck first. He disregarded a substantial risk that a wrongful act or result would occur. This was a reckless act. For a person who's literally got a flashlight in their hands, in the dark on a crowded driveway, at night as he's going down with his back to him. This is an attack from the back in which [Rasar] is just literally trying to cautiously walk down the stairs and he's ran into his own truck.

Because we reverse and remand for trial, we briefly address the argument that the court erred in refusing to give the defense instruction on battery. Our courts do not require a "specific intent" instruction for a charge of assault based on battery. State v. Hall, 104 Wn. App. 56, 62, 14 P.3d 884 (2000). "Assault by battery does not require specific intent to inflict harm or cause apprehension; rather, battery requires intent to do the physical act constituting assault." Hall, 104 Wn. App. at 62. The court did not err in refusing to give the defense instruction on battery.[8]

Miller also claims that because juries have the power to acquit even where a verdict is contrary to the evidence or the law, the court erred in instructing the jury that if it finds each element of assault in the second degree, "then it will be your duty to return

---

[8] We do not address Miller's argument regarding the court's refusal to give an instruction on defense of property. Whether Miller is entitled to a defense of property instruction will depend on the evidence presented at the trial. See State v. Walden, 131 Wn.2d 469, 473-74, 932 P.2d 1237 (1997).

11

a verdict of guilty." We disagree. In State v. Meggyesy, 90 Wn. App. 693, 958 P.2d 319 (1998), we squarely addressed and rejected this argument. See Meggyesy, 90 Wn. App. at 699-701 (a court does not err by instructing a jury that it has a duty to convict if it finds all of the elements of the crime proven beyond a reasonable doubt), abrogated on other grounds by State v. Recuenco, 154 Wn.2d 156, 110 P.3d 188 (2005).

Reversed and remanded.

Schindler, J

WE CONCUR:

Appelwick, J

Becker, J