754

[No. 63017-2-I. Division One. September 13, 2010.]

The State of Washington, *Respondent*, v. Eric Earl Holzknecht, *Appellant*.

*Neil M. Fox* (of *Law Office of Neil Fox PLLC*) and *Liza E. Burke* (of *Liza Burke Law PLLC*) for appellant.

*Mark Roe, Interim Prosecuting Attorney*, and *Mary K. Webber, Deputy*, for respondent.

---

¶1 ELLINGTON, J. — On December 1, 2007, two-month-old Grace Holzknecht was admitted to Children's Hospital with three leg fractures. Doctors determined the fractures were not caused by accidental trauma. Grace's father was charged with assault. Eric Holzknecht challenges his conviction on numerous grounds, including the constitutionality of RCW 10.58.035, violation of his Sixth Amendment right to confrontation, erroneous jury instructions, and insufficiency of the evidence. We affirm.

## FACTS

¶2 Amy and Eric Holzknecht's first child, Grace, was born on September 27, 2007. The Holzknechts lived with Eric's family, and Amy stayed home to care for Grace. Eric was also involved in caring for Grace, including changing her diaper. Three or four times, Grace was solely in her father's care.

¶3 Grace was a very fussy baby. On one occasion, the young parents called 911 because Grace would not stop crying. Paramedics assured them she was fine. When the crying continued, Amy insisted they take Grace to the emergency room. The staff there also stated that she was fine. The Holzknechts expressed their concerns to Grace's pediatrician, who told them Grace was normal. Sometimes the stress of a fussy newborn made Eric lose his patience. On those occasions, he would go for a walk or a drive to the store. When Amy became frustrated, her in-laws would take Grace into their room.

¶4 Grace cried during diaper changes no matter who changed her. At times, Amy thought Eric was rough and moving too fast when changing Grace. On several occasions, Amy asked him to be gentler with her. Sometimes he slowed down, but other times he became irritated and told her she "was being silly about it."[1] There were times Amy thought Eric might have hurt the baby. Amy's aunt, Lorinda Feagles, saw Eric change Grace's diaper and dress her in the hospital. She thought he was too quick and rough, and was "either very comfortable with a newborn or he was maybe showing off."[2]

¶5 In early to mid-November 2007, Eric was changing Grace's diaper when she began to defecate. Eric grabbed her legs and pulled her out of the way. When Amy came into the room, Eric was crying. He said, "I think I may have hurt her."[3] Grace's legs were visibly bruised. One leg had two bruises close to the knee; the other had two bruises close to the ankle. By the next day, however, Grace was "[k]icking around, all happy."[4]

¶6 Feagles noticed bruises on Grace's legs when the Holzknechts brought her for a visit. Amy "covered them up real quick,"[5] and Feagles took another look later, when she was alone with Grace.

¶7 On the afternoon of November 30, 2007, Amy left Grace in Eric's care at about three o'clock while she looked for a job. She returned around five o'clock. Grace was extremely fussy that evening and cried throughout the night. Around midnight, the Holzknechts noticed Grace was holding her right leg up and inward, as if to protect it. The next morning, they took Grace first to a walk-in clinic and then to the emergency room at Providence Hospital in

---

[1] Report of Proceedings (Nov. 18, 2008) at 79.

[2] *Id.* at 129.

[3] *Id.* at 82.

[4] *Id.* at 108.

[5] *Id.* at 131-32.

Everett. An x-ray showed a fracture to the right femur. The Holzknechts stated there had been no fall or other trauma, and nobody but them had cared for Grace in the previous 24 hours.

¶8 Grace was taken by ambulance to Children's Hospital in Seattle, where she was given a full body x-ray, which revealed a fresh long oblique or spiral fracture to the right femur, a one-to-two week old metaphyseal fracture (also known as classic metaphyseal lesion or CML) of the right tibia, and an even older metaphyseal fracture or CML of the left tibia. Pediatrician and pediatric radiologist Dr. Stephen Done concluded the fractures were the result of nonaccidental trauma.

¶9 Social worker Doris Bartel informed the Holzknechts about the fractures. Amy told Bartel she was concerned with how rough her husband had been during diaper changes. Holzknecht admitted he might have pulled too hard on Grace's leg during diaper changes but stated that if he did, it was unintentional.

¶10 The police and Children's Protective Services were called, and Grace was taken into protective custody. Amy told a police officer that she had seen her husband pick up Grace by her leg, that she had warned him on several occasions to be more careful, and that he sometimes lost his patience with Grace. Holzknecht confirmed Amy's report and signed a statement saying, "There have been times that I might have been rough with Grace's legs when changing her."[6] Describing the defecating incident, he stated:

> I was a little frustrated with the situation and accidentally grabbed and pushed a little too hard. After grabbing her, I realized that she had marks on her legs and that she was hurt. I felt horrible for hurting my child. I would never intentionally hurt my child, but I feel that the injuries could be my fault. There have been times when I grabbed Grace by one leg to change her. The break could have happened during one of those

---

[6] *Id.* at 143.

changing incidents or last night when I was examining her possible leg injury.[7]

The Holzknechts gave similar responses to various other people who interviewed them.

¶11 Children's Hospital has a child protective team that handles cases of suspected child abuse. Dr. Naomi Sugar, a pediatrician specializing in child abuse cases, is part of the team. She examined Grace and reviewed her records, including the x-rays. She also ordered a series of tests to determine whether there were possible metabolic or genetic causes for Grace's injuries. The tests, performed by three geneticists, an orthopedist, and an endocrinologist, ruled out any genetic or metabolic cause. After considering all the potential causes, Dr. Sugar concluded Grace's injuries were not accidental but were the result of abuse.

¶12 Holzknecht was charged with three counts of assault of a child in the second degree. The State alleged an aggravating factor (that defendant knew or should have known that the victim was particularly vulnerable and incapable of resistance).

¶13 A jury convicted Holzknecht of two counts of assault of a child in the second degree and one count of the lesser crime of assault of a child in the third degree. The jury also found the vulnerable victim aggravating factor established as to each count. Holzknecht appeals.

## DISCUSSION

*Jury Instructions Defining "Recklessness" and Other Mens Rea*

¶14 Holzknecht makes a number of arguments not raised below. We do not review issues raised for the first time on appeal unless they are manifest errors affecting a

---

[7] *Id.*

constitutional right.[8] "In analyzing the asserted constitutional interest, we do not assume the alleged error is of constitutional magnitude. We look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error."[9]

¶15 The error must also be manifest.[10] In this context, "manifest" requires a showing of actual prejudice.[11] To demonstrate actual prejudice, there must be a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' "[12] Manifest errors affecting constitutional rights are subject to harmless error analysis.[13] As a rule, a constitutional error is harmless only if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error.[14]

¶16 To ensure that the actual prejudice inquiry and the harmless error analysis are distinct, "the focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review."[15] " 'If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest.' "[16]

¶17 Holzknecht argues the jury instructions violated due process by creating mandatory presumptions and re-

---

[8] RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988).

[9] *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (citing *Scott*, 110 Wn.2d at 687, 689-91).

[10] *Id.* at 99.

[11] *Id.*

[12] *Id.* (alteration in original) (internal quotation marks omitted) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)).

[13] *Scott*, 110 Wn.2d at 688.

[14] *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002).

[15] *O'Hara*, 167 Wn.2d at 99-100.

[16] *Id.* at 99 (quoting *Kirkman*, 159 Wn.2d at 935).

lieving the State of its burden to prove the separate elements of intent and recklessness or criminal negligence. The instructions provided:

A person commits the crime of assault in the second degree when he or she intentionally assaults another and thereby recklessly inflicts substantial bodily harm.[17]

A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result which constitutes a crime.[18]

A person commits the crime of assault in the third degree when he or she [w]ith criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering.[19]

A person is criminally negligent or acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and the failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.

Criminal negligence is also established if a person acts intentionally or knowingly or recklessly.[20]

A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstances or result which is described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.

. . . .

Acting knowingly or with knowledge also is established if a person acts intentionally.[21]

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and the disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

---

[17] Clerk's Papers at 69.

[18] Clerk's Papers at 72.

[19] Clerk's Papers at 77.

[20] Clerk's Papers at 78.

[21] Clerk's Papers at 79.

Recklessness is also established if a person acts intentionally or knowingly.[22]

■ ¶18 Holzknecht did not except to these instructions below. However, if Holzknecht is correct, the claimed errors are of constitutional magnitude and are obvious on the record. Holzknecht may raise the issue for the first time on appeal.[23]

¶19 A similar challenge was addressed in *State v. Goble*,[24] in which Division Two of this court held that the instructions created a mandatory presumption.[25] Goble was charged with third degree assault of a police officer.[26] The to-convict instruction required the State to prove that Goble assaulted the victim and knew at the time of the assault that the victim " 'was a law enforcement officer . . . who was performing his or her official duties.' "[27] The instructions stated that " '[a]cting knowingly or with knowledge also is established if a person acts intentionally.' "[28]

¶20 The court agreed with Goble that the knowledge instruction was confusing and relieved the State of its burden to prove Goble knew the victim was a police officer.[29] Because the instruction "allowed the jury to presume Goble knew [the officer's] status at the time of the incident if it found Goble had intentionally assaulted [the officer]," the court held the instruction "conflated the intent and knowledge elements required under the to-convict instruction into a single element and relieved the State of its burden of

---

[22] Clerk's Papers at 80.

[23] *State v. Gerdts*, 136 Wn. App. 720, 726, 150 P.3d 627 (2007) (quoting RAP 2.5(a)(3)).

[24] 131 Wn. App. 194, 126 P.3d 821 (2005).

[25] *Id.* at 203-04.

[26] *Id.* at 196.

[27] *Id.* at 200 (emphasis omitted).

[28] *Id.* at 202 (emphasis omitted).

[29] *Id.* at 203.

proving that Goble knew [the officer's] status if it found the assault was intentional."[30]

¶21 *Goble* was distinguished by another Division Two decision, *State v. Keend*.[31] Keend was charged with second degree assault.[32] The jury was provided with a recklessness instruction identical to that given here.[33] Keend argued the instruction allowed the jury to presume that he recklessly inflicted substantial bodily harm on the victim if it found he intentionally assaulted the victim.[34]

¶22 The *Keend* court rejected this argument, noting that the to-convict instruction clearly advised the jury that the mens rea of "intentionally" related to the act (assault), while the mens rea of "recklessly" related to the result (substantial bodily harm), both of which were defined.[35] There was thus no possibility the jury was confused because the instructions did not conflate the mental states and were accurate, clear, and separate, and did not create a presumption that if the defendant intentionally assaulted the victim, he also intended to inflict substantial bodily harm.[36] The same is true here and we agree with the *Keend* court's analysis.

¶23 In *State v. Gerdts*,[37] Division Two addressed a similar challenge in the context of a charge of malicious mischief in which the State was required to prove the defendant

---

[30] *Id.* This court considered an identical challenge in *State v. Atkins*, 156 Wn. App. 799, 236 P.3d 897 (2010), and held the knowledge instruction created an impermissible mandatory presumption, which in that case was harmless under *Yates v. Evatt*, 500 U.S. 391, 111 S. Ct. 1884, 114 L. Ed. 2d 432 (1991).

[31] 140 Wn. App. 858, 166 P.3d 1268 (2007).

[32] *Id.* at 862.

[33] *Id.* at 863-64.

[34] *Id.* at 865.

[35] *Id.* at 866-68.

[36] *Id.* at 868.

[37] 136 Wn. App. 720, 150 P.3d 627 (2007).

knowingly and maliciously caused damage.[38] Gerdts contended the knowledge instruction created a mandatory presumption that he acted knowingly if the jury found he acted intentionally.[39] The *Gerdts* court rejected his argument because the instructions "required the jury to find that Gerdts knowingly and maliciously caused physical damage to the property of another" and there was no second mens rea element involved.[40]

¶24 In response to *Goble*, former Washington Pattern Jury Instruction: Criminal (WPIC) 10.02[41] was revised in 2008 to add bracketed language as follows: "[When acting knowingly [as to a particular fact] is required to establish an element of a crime, the element is also established if a person acts intentionally [as to that fact].]"[42] The revision was intended "to follow the statutory language more closely" and clarify that "knowledge about Fact A (the victim's status) cannot be inferred from an intent about Fact B (committing an assault)."[43] Former WPIC 10.03[44] was also revised to include language referencing a particular result or fact: "[When recklessness [as to a particular [result] [fact]] is required to establish an element of a crime, the element is also established if a person acts [intentionally] [or] [knowingly] [as to that [result] [fact]].]"[45]

¶25 After the 2008 amendments, Division Two considered a challenge to a recklessness instruction in an assault

---

[38] *Id.* at 728.

[39] *Id.* at 727.

[40] *Id.* at 728 (emphasis omitted).

[41] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02, at 150 (2d ed. 1994).

[42] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02, at 206 (3d ed. 2008) (WPIC) (alterations in original).

[43] *Id.*, cmt. at 207, 208.

[44] 11 WPIC 10.03, at 153 (1994).

[45] 11 WPIC 10.03, at 209 (2008) (alterations in original).

case. In *State v. Hayward*,[46] the court held the instruction conflated the mens rea for assault with that required for the resulting harm, relieving the State of its burden of proving the separate element of reckless infliction of substantial bodily harm.[47] The court relied heavily on the 2008 amendment to WPIC 10.03:

> The revision to WPIC 10.03, carried out in order "to more closely follow the statutory language," shows that the previous version of WPIC 10.03 (1994) did not adequately follow RCW 9A.08.010. . . .
>
> . . . While jury instruction 10 mirrored former WPIC 10.03, it did not adequately follow RCW 9A.08.010(2), as evidenced by the 2008 amendment to WPIC 10.03.[48]

We respectfully disagree. We see nothing in former WPIC 10.03 suggesting a departure from the statute. RCW 9A.08.010(2) provides:

> When a statute provides that criminal negligence suffices to establish an element of an offense, such element also is established if a person acts intentionally, knowingly, or recklessly. When recklessness suffices to establish an element, such element also is established if a person acts intentionally or knowingly. When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally.

Clarification of the standard instruction does not amount to an indictment of earlier versions.

¶26 Most recently in *State v. Sibert*,[49] the State was required to prove the defendant delivered a controlled substance knowing its nature as a controlled substance. Sibert argued the language " '[a]cting knowingly or with knowledge also is established if a person acts intentionally' " created a conclusive presumption of knowledge once

---

[46] 152 Wn. App. 632, 217 P.3d 354 (2009).

[47] *Id.* at 645.

[48] *Id.* at 645-46 (quoting 11 WPIC 10.03, at 211 (2008)).

[49] 168 Wn.2d 306, 230 P.3d 142 (2010).

any intentional act was proved.[50] A plurality of the Washington Supreme Court rejected his argument, stating, "Under a plain reading of the jury instructions, the State was not relieved of proving every element of the charged offense."[51] The court described *Gerdts* as limiting *Goble* to its facts and endorsed the *Gerdts* analysis.[52]

¶27 We are persuaded the instructions here followed the statute and correctly informed the jury of the applicable law, including the rule that a mental state is established by proof of a more serious mental state. The instructions made clear that a different mental state must be determined for each element: intent as to assault, and recklessness as to infliction of substantial bodily harm. The instructions thus clearly require two separate inquiries, and nothing in the knowledge instruction suggests otherwise.

¶28 Indeed, on the record here, this concern is refuted by the verdict. The jury convicted Holzknecht of two counts as charged, but on the third count convicted him only of the lesser crime of assault in the third degree. The jury thus clearly understood the difference between the intentional act of assault and the mens rea required for the resulting injury (recklessness versus negligence).

¶29 The instructions did not create a mandatory presumption or relieve the State of its burden of proof.

¶30 Affirmed.

¶31 The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.

BECKER and SCHINDLER, JJ., concur.

Review denied at 170 Wn.2d 1029 (2011).

---

[50] *Id.* at 315-16.

[51] *Id.* at 316-17.

[52] *Id.* at 317 n.7.