IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

          Respondent,

        v.

TIMOTHY SEAN MARTIN,

          Appellant.

No. 84175-1-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — Timothy Martin appeals a standard range sentence imposed after two of his previous convictions were vacated pursuant to *State v. Blake*.[1] He argues that his right to be present at resentencing was violated and that the court failed to properly consider evidence of his postconviction rehabilitation. Martin also asserts that he was given inaccurate information as to his offender score during plea negotiations prior to his 2007 trial and seeks reversal of the convictions on that basis. Because Martin fails to demonstrate any error, we affirm his convictions and sentence. However, we remand for the sentencing court to strike the victim penalty assessment.

FACTS

In 2006, Timothy Martin was charged with one count each of robbery in the second degree and kidnapping in the first degree. The State accused him of

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021).

carjacking a mother at knifepoint with her children, who were four- and two-years-old at the time, in the backseat, and telling her that he would "cut her babies" if she did not comply with his demands. Martin took her car and drove off with the children still in the backseat. The car was found the next day with the children still inside and physically unharmed. When the case against Martin commenced, the parties entered into plea negotiations which were ultimately unsuccessful and Martin chose to exercise his right to trial.

Before the start of trial, the State filed an amended information that added two more counts of kidnapping in the first degree (one for each of the children). Martin proceeded to trial on the amended information and the jury found him guilty on all counts. His offender score was calculated as 12 for count 1, kidnapping in the first degree, and 16 for count 4, robbery in the second degree. The other convictions for kidnapping in the first degree, counts 2 and 3, each carried scores of zero under RCW 9.94A.589. The standard sentencing ranges were as follows: 149-198 months for count 1, 51-68 months each for counts 2 and 3, and 63-84 months for count 4. The trial court imposed the high end of the standard range on each count and sentenced Martin to 334 total months of confinement.[2]

In March 2022, Martin filed a motion under CrR 7.8(b) to correct his offender score and to be resentenced based on our Supreme Court's holding in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).[3] Martin's offender score at

---

[2] The sentences on counts 1-3 were ordered to run consecutively for a total of 334 months, while count 4 was ordered concurrent to them pursuant to RCW 9.94A.589(b).

[3] In *Blake*, the court held that Washington's drug possession statute, former RCW 69.50.4013(1) (2017), which "criminaliz[ed] innocent and passive possession," was unconstitutional and void as it "violate[d] the due process clauses of the state and federal constitutions." 197 Wn.2d at 195.

sentencing in 2007 included two counts of possession of a controlled substance that were both vacated and dismissed under *Blake*. He sought resentencing based on his recalculated offender score despite the fact that, even after correction, his sentencing ranges would not have changed. The State objected on this basis, but the trial court granted Martin's motion.[4]

At the resentencing hearing on May 25, 2022, the State provided Martin's recalculated offender score pursuant to *Blake* and noted that "even with the two convictions that are no longer being scored . . . his score exceeds the 9-point maximum that the legislature put together in our Sentencing Reform Act scoring grids." The State then recommended the high end of the standard range on each count, which would result in the same sentence as initially imposed in 2007. Its recommendation was based on Martin's offender score being "above the maximum contemplated by the legislature" and the underlying "facts of the case," which the State stated were "appalling."

Defense counsel requested the "lowest sentence in the range" and emphasized the growth and development that Martin had exhibited since he was convicted in 2007. The mitigation evidence provided to the court to illustrate his progress included Martin's "14 years of sobriety," admission into the "Veterans Unit" in prison, and completion of various programs while incarcerated, including the "Paralegal Diploma Program" with a "94.35 percent student average." Martin

---

[4] The State correctly noted in briefing and argument before this court that *In re Personal Restraint of Richardson*, which was decided a few months after Martin's CrR 7.8 motion was heard, held that when a change in offender score does not result in a different standard range, the judgment and sentence is not facially invalid and a collateral attack on that judgment and sentence is subject to the one-year time bar under RCW 10.73.090(1). 200 Wn.2d 845, 847, 525 P.3d 939 (2022). In other words, had Martin's CrR 7.8 motion been filed after *Richardson* was decided, it would have been deemed untimely and no resentencing would have occurred.

also addressed the court. He stated he took "full responsibility for everything [he] did," that "[i]f there was a way [he] could go back and change everything, [he] would," and further spoke to the positive measures he had undertaken since his conviction.

Ultimately, the trial court imposed the high end of the standard range sentence. The trial court acknowledged that Martin's conduct since his conviction was "commendable," but noted that the crimes he committed were "horrendous." The court also explained that the *Blake* decision did not change Martin's standard range: "In fact, you were off the chart then. You are off the chart now. You are still off the chart. The standard sentencing range remains the same. And the fact that it is less off the chart than it was is not a sufficient reason to go below the high end."

Martin timely appealed.

## ANALYSIS

I.    Ability To Fairly Assess State's Plea Offer

Martin first assigns error to the inclusion of "void convictions" in his criminal history which, he asserts, "deprived him of the ability to fairly assess the government's offer to plead guilty" to one count of kidnapping in the first degree. On that basis, he asks this court to vacate his convictions and compel the State to stand by the original plea offer. While no such language or analysis is found in his

opening brief, the remedy Martin seeks rests on a claim of ineffective assistance of counsel (IAC) during plea negotiations.[5]

"The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel." *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). This right extends to the process of negotiating a plea bargain. *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011). Claims of ineffective assistance arising from plea negotiations are subject to the two-part test set out in *Strickland v. Washington*. 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See also Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Accordingly, in order to succeed, "the defendant must show both (1) deficient performance and (2) resulting prejudice." *Estes*, 188 Wn.2d at 457-58. "A failure to make either showing terminates review of the claim." *Brown*, 159 Wn. App. at 371. Our review is de novo. *Estes*, 188 Wn.2d at 457.

To satisfy the first prong of the *Strickland* test, the defendant must show that their "counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251, 1256 (1995). "There is a strong presumption that counsel's performance was reasonable" and it will be deemed so when "counsel's conduct can be characterized as legitimate trial

---

[5] Martin presents argument under the IAC framework for the first time in his reply brief, only after the State analyzed the issue under the test set out in *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

strategy or tactics." *State v. Kyllo*, 166 Wn.2d 856, 862-63, 215 P.3 177 (2009). When assessing counsel's performance, we make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Thus, the reasonableness of counsel's performance is analyzed "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).

In the context of plea bargaining, the defendant "must demonstrate that [their] counsel failed to 'actually and substantially' assist [them] in determining whether to plead guilty." *Brown*, 159 Wn. App. at 371 (quoting *State v. Osborne*, 102 Wn.2d 87, 99, 684 P.2d 683 (1984)). While counsel has a duty to research relevant law and is responsible for "following a long-standing well-settled rule of law," they are not required to anticipate or "predict changes in the law in order to provide effective assistance." *Id.* at 372-73; *State v. Slighte*, 157 Wn. App. 618, 625, 238 P.3d 83 (2010), *rev'd on remand on other grounds*, 164 Wn. App. 717, 267 P.3d 401 (2011). Such a requirement would be impracticable as it would "set a standard for diligence that obliges counsel to raise issues in anticipation of any possible change in the law." *Brown*, 159 Wn. App. at 373.

The second prong of the *Strickland* test requires the defendant to show that "counsel's deficient representation prejudiced the defendant, *i.e.,* there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *McFarland*, 127 Wn.2d at 335. In

this context, the "defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Specifically, the defendant is required to demonstrate

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Estes*, 188 Wn.2d at 458.

In his opening brief, Martin fails to even mention *Strickland*, let alone set out the two-part test for ineffective assistance of counsel and apply it to the facts of his case. Rather, he cites to *Lafler* for the proposition that "[w]hen a decision to go to trial is based on inaccurate information, the remedy is to vacate the convictions and allow the defendant to plead guilty." However, this is an incorrect statement of the law and, more critically, this argument, framed by selective quotation, ignores the entire basis on which the Supreme Court granted the remedy. [6] *Lafler* dealt with a claim of ineffective assistance of counsel during plea negotiations and the Court was clear that defendants are required to satisfy both prongs of the *Strickland* test in order to prevail. *Lafler*, 566 U.S. at 162-63. Though Martin attempts to build out a claim for ineffective assistance of counsel in his reply brief, his "argument raised for the first time in a reply brief is too late for consideration."

---

[6] In *Lafler*, all parties agreed that counsel's performance was deficient and so the Court's analysis was primarily focused on the prejudice prong. 566 U.S. at 163.

*State v. Pervez*, 15 Wn. App. 2d 265, 272 n.11, 478 P.3d 103 (2020) (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Because Martin failed to properly mount this challenge under the controlling legal framework, we decline to consider it further.[7]

II.    Imposition of Standard Range Sentence

Martin contends the trial court erred at resentencing by failing to account for his rehabilitation. We disagree.

Generally, "the length of a criminal sentence imposed by a superior court is not subject to appellate review, so long as the punishment falls within the correct standard sentencing range established by the Sentencing Reform Act of 1981 [(SRA)], chapter 9.94A RCW." *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). In other words, a standard range sentence imposed for an offense "shall not be appealed." RCW 9.94A.585(1). This is based on the understanding that, "so long as the sentence falls within the proper presumptive sentencing

---

[7] Martin further argues that his attorney's performance was deficient because the attorney did not challenge the constitutionality of RCW 69.50.4013. However, he raises this issue for the first time in reply. We do not consider arguments presented for the first time in reply. *State v. Wilson*, 162 Wn. App. 409, 417 n.5, 253 P.3d 1143 (2011).

More critically, it is not lost on this panel that a holding that declares counsel deficient for not challenging the constitutionality of the criminal statutes underlying a client's prior convictions for the purpose of determining the correct offender score would have significant practical implications. While Martin is correct that counsel has a duty to calculate the offender score based on the consideration of wash out, same criminal conduct, comparability of out of state convictions, and other factors as set out by statute, and also correct that a conviction that is void based on an unconstitutional statute is void from inception, the ruling he seeks from this court is not supported by law. *See Brown*, 159 Wn. App. at 372-73; *see also Slighte*, 157 Wn. App. at 625.

Further, the only way Martin's original trial counsel could have determined that the statute at issue was void, thus reducing his offender score by two points, would have been to challenge the constitutional validity of RCW 69.50.4013. From a procedural standpoint, it is unclear when that could have occurred during the criminal proceedings on the kidnapping and robbery charge, apart from sentencing, which still would not have provided Martin with the information he now claims was constitutionally required in time to bear on plea negotiations.

ranges set by the legislature, there can be no abuse of discretion as a matter of law as to the sentence's length." *Williams*, 149 Wn.2d at 146-47.

However, this court may review the imposition of a standard range sentence for the "correction of legal errors or abuses of discretion in the determination of what sentence applies." *Id.* at 147. We will only reverse a decision of the sentencing court that constitutes "a clear abuse of discretion or misapplication of the law." *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). An abuse of discretion exists when the decision "'is manifestly unreasonable or based upon untenable grounds.'" *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012) (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

There is no abuse of discretion as to the imposition of the standard range sentence here. Before imposing Martin's sentence, the trial court explained:

> I have read the defense sentencing memorandum. And I have read all of the letters written on your behalf. And I have seen all of the various certificates. I will say, sir, that it is commendable that while you have been in prison that you have made some good choices. You have been clean and sober and crime free and have taken steps to improve yourself. And that is clear. I will say that is, in fact, what is hoped for with regard to prison, if not expected. Although, it is not what happens in every case. I understand you have done that.

"But," the court continued, "here's the trouble, Mr. Martin. And you alluded to it when you said you wished there was some way you could undo what you did. You cannot undo what you did. What you did[,] you did. And it was horrendous."

The court then explained that it did not have a reasonable basis to grant Martin's requested sentence, even in light of the *Blake* decision:

> And what the *Blake* decision has done is insignificant toward changing your score. Well, it changes your score. But it doesn't change your standard range. In fact, you were off the chart then. You

are off the chart now. You are still off the chart. The standard sentencing range remains the same. And the fact that it is less off the chart than it was is not a sufficient reason to go below the high end given that there is still a basis upon which Judge Thorpe all those years ago could have given you an exceptional upward departure from the standard range, even with the score as it is today, even with you being a 10.

Martin's only challenge on this issue is his assertion that the trial court purportedly failed to "properly consider" evidence of Martin's rehabilitation when it again imposed a high end sentence within the standard range. Martin's contention is not only directly refuted by the record, but also by his own briefing where he states: "The court commended his rehabilitation but did not take it into account," and, "Despite the court's recognition that Mr. Martin had made commendable changes while incarcerated, it reinstated the original sentence." Martin appears to believe that "proper consideration" of the evidence he presented could have only resulted in the court granting his request for a low end sentence.[8]

As the State points out in briefing, Martin's argument relies on federal cases interpreting federal statutes and state cases concerning juvenile defendants, none of which require the result he seeks in this case, where the defendant was convicted under state law for acts he committed at 38 years old. For example, in reply, Martin cites to *State v. Delbosque*, 195 Wn.2d 106, 117, 456 P.3d 806 (2006) for the following rule statement: "A trial court fails in its obligations when it does not

---

[8] At oral argument before this court, when asked whether the sentencing court said it would not consider Martin's evidence of rehabilitation or that it was not going to accept Martin's request for a low end sentence based on the nature of the facts, Martin's counsel stated that it was the former. However, he then simply pointed to the evidence of rehabilitation that was presented at sentencing and emphasized that the sentencing court imposed the same sentence that was originally imposed. Wash. Ct. of Appeals oral argument, *State v. Martin*, No. 84175-1-I (July 18, 2023), at 1 min., 15 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023071121.

properly consider evidence of rehabilitation." In the next sentence of his reply brief, Martin concludes that because the trial court failed to do so here, this court "should order resentencing." A thorough reading of *Delbosque*, however, demonstrates that it is inapposite here.

*Delbosque* concerned a 17-year-old defendant who was sentenced to mandatory life in prison without the possibility of parole and was resentenced over 20 years later in the wake of *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).[9] 195 Wn.2d at 111-12. Pursuant to the "*Miller*-fix" statutes, which govern the resentencing of juveniles after *Miller*, the trial court was required to consider mitigating factors that "'account for the diminished culpability of youth,'" such as the "'age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and *the youth's chances of becoming rehabilitated*.'" *Delbosque*, 195 Wn.2d at 115 (emphasis added) (quoting former RCW 10.95.030(3)(b) (2015)). The line of cases cited by Martin is rooted in the science of youth and brain development and the consistent and expansive evidence which supports our United States Supreme Court's conclusion that "children are different." *Miller*, 567 U.S. at 480. Unlike Delbosque, Martin was not a juvenile when he committed the crime for which he was initially sentenced, he was nearly 40. Thus, the special consideration of a juvenile's

---

[9] In *Miller*, the Supreme Court held that "the Eighth Amendment's ban on cruel and unusual punishment prohibits mandatory life without parole sentences for juveniles and requires sentencing judges to consider 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Delbosque*, 195 Wn.2d at 112 (quoting *Miller*, 567 U.S. at 480).

- 11 -

capacity for rehabilitation at issue in Delbosque's resentencing was not required here.

At oral argument, Martin presented further argument under a recently issued opinion from Division Three of this court, *State v. Dunbar*, __ Wn. App. 2d __, 532 P.3d 652 (2023).[10]  At the direction of the panel, the parties submitted supplemental briefing on the applicability of *Dunbar* to the facts here.  Like Martin, Dunbar was resentenced after two of his previous convictions for possession of a controlled substance were vacated pursuant to *Blake*, which resulted in a lower offender score but did not change the applicable standard sentence ranges. *Dunbar*, 532 P.3d at 655.  At resentencing, in support of his request for a sentence on the low end of the standard range, Dunbar submitted evidence of rehabilitation that had taken place after his convictions.  *Id.* at 654-55.  At the close of the hearing, the resentencing court imposed the same high end sentence that was originally ordered.  *Id.* at 655.  On appeal, Dunbar argued that the resentencing court "failed to consider his rehabilitation and erroneously bound itself" to the original sentence.  *Id.* at 654.  This court agreed and remanded for another sentencing hearing.  *Id.* at 659.

In *Dunbar*, Division Three followed existing case law to reiterate the duties and obligations of superior courts at resentencing.  The court explained that "unless the reviewing court restricts resentencing to narrow issues, any resentencing should be de novo."  *Id.* at 656.  Further, the resentencing court is "free to consider any matters relevant to sentencing," including those that were not

---

[10] Wash. Ct. of Appeals oral argument, *supra*, at 0 min., 30 sec.

raised at the initial sentencing hearing. *Id.* at 658. Division Three reinforced that the resentencing court "may impose the identical sentence or a greater or lesser sentence within its discretion," but it "may not rely on a previous court's sentence determination and fail to conduct its own independent review." *Id.*

Martin contends that the resentencing court here did "not satisfy the standards laid out in *Dunbar.*" However, he merely recites the rehabilitation evidence provided at resentencing and then concludes that the court "gave no credit to [his] extensive rehabilitation." The State argues that *Dunbar* is distinguishable because the resentencing court here did consider Martin's evidence of rehabilitation and exercised independent judgment when it ordered the same sentence as originally imposed. Because the standards articulated in *Dunbar* are not new to this court, they do not change our analysis here. Without more, the imposition of the same term of incarceration as previously ordered does not mean the resentencing court failed to conduct its own independent review or consider Martin's rehabilitation evidence. This is particularly true when the record clearly establishes that the court did evaluate not only the work Martin had undertaken to change his life while incarcerated, but also the newly corrected offender score and the underlying facts supporting the crimes of conviction. Martin has failed to demonstrate "a clear abuse of discretion or misapplication of the law." *Porter,* 133 Wn.2d at 181. Finding no error, we affirm the sentence.

III.     Constitutional Right to be Present at Sentencing

         A.     Remote Appearance at Resentencing

For the first time on appeal, Martin argues he was denied his constitutional right to be present at sentencing because he appeared remotely rather than in person.

Criminal defendants have "a constitutional right to be present at sentencing, including resentencing." *State v. Rupe*, 108 Wn.2d 734, 743, 743 P.2d 210 (1987). However, this right can be waived by the failure to object and trial courts are "not required to probe into the issue of whether the defendant is voluntarily waiving the right to presence if no objection is made." *State v. Anderson*, 19 Wn. App. 2d 556, 561, 497 P.3d 880 (2021), *review denied*, 199 Wn.2d 1004 (2022).  Martin did not object to appearing remotely at resentencing.  Moreover, he does not assert any basis for review under RAP 2.5(a) in his opening brief.  Again, we will not reach issues or arguments presented for the first time in reply.  *State v. Orozco*, 144 Wn. App. 17, 21-22, 186 P.3d 1078 (2008).  Because Martin did not object in the trial court to appearing remotely for his resentencing hearing and fails to demonstrate on appeal that the alleged error is of a constitutional magnitude and manifest, we do not consider this challenge.  *See State v. Holzknecht*, 157 Wn. App. 754, 759-60, 238 P.3d 1233 (2010); *see also* RAP 2.5(a)(3).

         B.     Appearing from Prison is Distinct from Shackling

Martin next asserts that his constitutional right to be present at resentencing was violated because the trial court failed to conduct an individualized assessment before allowing him to appear remotely from prison.  According to Martin,

videoconferencing from prison was "the same as appearing before the court in shackles." We disagree.

While constitutional claims are generally reviewed de novo, we review the shackling of a defendant for an abuse of discretion. *State v. Jackson*, 195 Wn.2d 841, 850, 467 P.3d 97 (2020). Pursuant to article I, section 22 of our state constitution, "In criminal prosecutions the accused shall have the right to appear and defend in person." This right includes "'the use of not only [their] mental but [their] physical faculties unfettered, and unless some impelling necessity demands the restraint of a prisoner to secure the safety of others and [their] own custody, the binding of the prisoner in irons is a plain violation of the constitutional guaranty.'" *State v. Lundstrom*, 6 Wn. App. 2d 388, 393, 429 P.3d 1116 (2018) (quoting *State v. Williams*, 18 Wash. 47, 51, 50 P. 580 (1897)). Accordingly, before shackling a defendant, "trial court[s] *must* engage in an individualized inquiry into the use of restraints prior to every court appearance" and determine "the extent to which courtroom security measures are necessary to maintain order and prevent injury." *Jackson*, 195 Wn.2d at 854; *State v. Hartzog*, 96 Wn.2d 383, 400, 635 P.2d 694 (1981).

Though nothing in the record indicates that Martin was shackled when he appeared via video for resentencing, Martin relies on *State v. Jackson* in support of this assignment of error. *Jackson* addressed the trial court's adoption of a policy that forced all incarcerated defendants into waist chains, handcuffs, leg irons, and/or leg braces for court appearances, without an individualized assessment as to their individual flight risk or other safety considerations. 195 Wn.2d at 845, 847.

Pursuant to that policy, Jackson was forced to wear physical restraints at every court hearing. *Id.* at 844. At his first appearance before the court, Jackson "was shackled with handcuffs and a belly chain," and he was fitted with a leg brace at trial. *Id.* at 845, 847. The jury found him guilty. *Id.* at 849. On appeal, Jackson argued his constitutional right to due process was violated because the trial court failed to engage in an individualized inquiry into the necessity of restraints for his court appearances. *Id.* Our Supreme Court agreed, determined the error was not harmless, and reversed the conviction. *Id.* at 845.

The court's analysis in *Jackson* began with a review of the historical restrictions on shackling incarcerated individuals with irons, chains, manacles, and bonds. *Id.* at 850-51. Prior to 1722, when prisoners were arraigned or entering a plea, they were not shackled "'unless there was evident danger of [their] escape,'" and by the late 1800s, our Supreme Court expressly held that shackling defendants was prohibited without an individualized determination of its necessity. *Id.* at 851 (quoting *Williams*, 18 Wash. at 49). Despite this, our Supreme Court noted, the practice of systematically restraining all incarcerated defendants had continued in certain trial courts in our state. *Id.* Looking beyond the problems of shackling within the courtroom, the court then painted a vivid picture of the role that shackling has played in the history of our country as a "means of control and oppression:"

> Shackles and restraints remain an image of the transatlantic slave trade and the systematic abuse and ownership of African persons that has endured long beyond the end of slavery. Shackles and restraints also represent the forced removal of Native people from their homelands through the Trail of Tears and the slave labor of Native people. We recognize that although these atrocities

occurred over a century ago, the systemic control of persons of color remains in society, particularly within the criminal justice system.

*Id.*

We are unmoved by the attempt here to conflate the uniquely complex history of shackling with technological advances which allow incarcerated people to attend court proceedings without having to endure the physical and logistical hardships of the often byzantine process of prison transport. The analysis in *Jackson* was clearly rooted in the imagery and impact of restraints, bindings, and irons, which were complicated by a history of violent colonial practices. Martin does not even attempt to demonstrate which, if any, of these concerns are present here to trigger the application of *Jackson* as controlling authority. The record does not establish that Martin was bound, chained, handcuffed, or braced. He video conferenced into the court proceedings from prison. The same issue was recently addressed in our unpublished opinion in *State v. Williams* and, there, we "decline[d] to read *Jackson* for the broad proposition that any videoconference appearance from prison violates the defendant's constitutional rights." No. 82803-7-I, slip op. at 10 (Wash. Ct. App. June 13, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/828037.pdf, *review denied*, 200 Wn.2d 1014 (2022).[11] We adopt the reasoning set out in *Williams* and conclude that *Jackson* is inapplicable to these facts. Because Martin fails to demonstrate that he was shackled for the resentencing hearing, the trial court was not required to conduct an individualized assessment on that issue.

---

[11] While GR 14.1(c) directs that "Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions," the similarity of the issue at hand makes the case relevant to this decision.

IV.    Legal Financial Obligations and Indigency

Finally, Martin challenges the rulings of the resentencing court as to two matters relating to legal financial obligations based on its finding of indigency. If a defendant is indigent at sentencing, courts are prohibited from imposing discretionary costs on them. *State v. Ramirez*, 191 Wn.2d 732, 748, 426 P.3d 714 (2018).

A.    Appellate Costs

Martin asserts that the trial court "misapprehended that it could waive appellate court costs" when he was resentenced. He now requests this court strike those costs.

"RAP 14 authorizes appellate judges, commissioners, and clerks to award appellate costs to the State, including the costs of appointed counsel." *State v. Stump*, 185 Wn.2d 454, 459, 374 P.3d 89 (2016). After Martin's initial unsuccessful appeal in this matter, the Clerk of our Supreme Court imposed $11,146.83 in costs under the RAP. At the close of the resentencing hearing, after the trial court expressly found Martin indigent, Martin asked whether the court was waiving all of his legal fees from 2007, including "$22,000" related to his appeal. In response, the trial court stated that it "only had jurisdiction over the trial" and "[t]he appellate court gets to decide what happens to the appeal."

Under the version of the statute in effect at the time of Martin's resentencing, the petition to remit costs could only be made after the defendant had been released from total confinement. Former RCW 10.73.160(4) (2018). In briefing, the State relied on this outdated version to argue that Martin was not eligible for

relief at the time he presented his request because he was still serving his sentence.  This is true under the former version of the law.  However, the statute as amended allows a defendant to petition the sentencing court for remission of the payment of costs "*at any time.*"  RCW 10.73.160(4) (emphasis added), *amended by* LAWS OF 2022, ch. 260, § 10.  Because this statute is remedial in nature, it applies prospectively, and the precipitating event for its application is the termination of the appeal.  *State v. Blank*, 131 Wn.2d 230, 249-50, 930 P.2d 1213 (1997).  Further, the State conceded at oral argument that Martin was entitled to relief under this statute.[12]

While the parties agree that Martin is eligible to seek remission of his appellate costs, we are not the proper court to grant this relief as the statute's plain language directs defendants to "petition the court that sentenced" them.  RCW 10.73.160(4).  Thus, we decline Martin's request to vacate the appellate costs.[13]

B.     Victim Penalty Assessment

Prior to oral argument, Martin filed a supplemental assignment of error challenging the trial court's imposition of the Victim Penalty Assessment (VPA) under the amended version of RCW 7.68.035.[14]

At sentencing on May 25, 2022, the trial court found Martin indigent and imposed the $500 VPA, which was mandatory at the time regardless of indigency.

---

[12] Wash. Ct. of Appeals oral argument, *supra*, at 17 min., 20 sec.

[13] We note, however, that Martin is otherwise free to renew his petition to remit appellate costs in the trial court.

[14] Martin's corresponding motion to supplement the assignments of error was granted by the court administrator and the State was invited to submit responsive briefing, which was filed shortly after argument was heard.

Thereafter, our legislature added a provision to RCW 7.68.035 that prohibits courts from imposing the VPA on defendants who are found indigent at sentencing. LAWS OF 2023, ch. 449, §1; RCW 7.68.035(4). This amendment took effect on July 1, 2023, while Martin's appeal was pending. *Id.*

As Division Two of this court explained in *State v. Ellis*, RCW 7.68.035(4) applies prospectively to cases on direct appeal. __ Wn. App. 2d __, 530 P.3d 1048, 1057 (2023). Thus, even though the amendment took effect after Ellis was sentenced, it applied to his case on appeal. *Id.* (citing *Ramirez*, 191 Wn.2d at 748-49). Because there was no finding that Ellis was indigent and the State did not concede the issue, the case was remanded for the trial court to determine whether Ellis was indigent and to reconsider the imposition of the VPA. *Id.* at 12-13. Here, as the trial court expressly found Martin indigent at sentencing and the State does not contest that finding, there is no need for reconsideration of that issue. Under *Ellis*, this record is sufficient to warrant correction of the judgment and sentence without further inquiry.

The State disagrees with *Ellis* and urges this court not to follow it for multiple reasons, none of which are persuasive. This is particularly true as we have already considered and rejected these same arguments in *State v. Wheeler*, No. 83329-4-I, slip op. at 16-22 (Wash. Ct. App. Aug. 7, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/833294.pdf. Because the resentencing court found Martin indigent and RCW 7.68.035(4) prohibits the imposition of the VPA on indigent individuals, we remand for the trial court to strike the VPA from Martin's judgment and sentence.

We remand for the trial court to strike the VPA, but otherwise affirm.

_Hazelrigg, A.C.J._

WE CONCUR:

_Smith, C.J._          _Coburn, J._